# CASES

IN THE

# SUPREME JUDICIAL COURT

FOR

## THE COUNTY OF OXFORD, MAY TERM, 1831.

---

### FARRAR *vs.* PERLEY & *al.*

The provincial statute of 1738, [11 *Geo.* 2,] authorising the sale of delinquent proprietors' lands after thirty days notice, was not, by any necessary or fair implication, repealed by that of 1753, [26 *Geo.* 2 *An. Char. p.* 598,] which required a delay of six and twelve months and a subsequent notice of forty days, they not being in *pari materia.*

An article to raise money for certain purposes, inserted in the warrant for a meeting of the proprietors of lands, is not exhausted of its efficacy by a single vote raising a certain sum; but further sums may from time to time be lawfully raised at subsequent adjournments of the same meeting, till the objects of the proprietors are accomplished.

THIS was an action of trespass *quare clausum fregit,* for cutting trees on lot *No.* 45, in the second division in *Lovel,* drawn to the original right of *Robert Moor ;* and it was tried before *Parris J.* upon the general issue.

The plaintiff showed that the township was originally granted to *Noah Johnson* and others, *Feb.* 5, 1774, upon the usual conditions

that the grantees should, within six years, settle thirty families thereon, build a meeting house, settle a protestant minister, &c.; and return a plan within twelve months, for confirmation. The plan was returned, and the grant confirmed *April* 13, 1779; and the time for settlement was prolonged to *February* 1784, and afterwards to *February* 1787. *Robert Moor* was shown to have been one of the original grantees; to whose right the lot *No.* 35, was drawn *Oct.* 12, 1780; and the lots *No.* 45 and 113, at a subsequent meeting *Dec.* 18, 1783. The plaintiff claimed under a quit-claim deed from *Moor*, dated *June* 3, 1819, by which he, for a valuable consideration the amount of which was not stated, released and conveyed to the plaintiff all his right, title and share, being one right, to lands in *New Suncook, Lovel* and *Sweden.* And the plaintiff proved his own entry on lot *No.* 45, being the *locus in quo*, in *March* or *April,* 1820, at which time it was wholly wild and uncultivated; and again in *April* 1821, after the defendants had cut the timber in question.

It further appeared that the proprietors held a meeting *March* 23, 1780, to act on various matters touching the settlement of their township; and among others the fourth article was to raise money for the clearing of roads, building of bridges, bringing forward settlements, and paying of debts; under which article they voted to raise a tax of one hundred dollars on each right, not saying for what purpose. At an adjournment of this meeting in *November* 1780, a further tax of five dollars on each right or share was raised, for the purpose of building mills and making roads; and on *December* 18, 1781, after several intermediate adjournments of the same meeting, it was voted to raise a tax of three silver dollars on each right, to defray the charges of the proprietors. For the nonpayment of this last tax, the whole right of *Robert Moor* was sold *Dec.* 26, 1782, by the proprietors' collector, who was duly authorised for that purpose. And the title of the purchaser under this sale was regularly deduced to the defendants.

It was also shown that at another meeting of the proprietors, in *May* 1783, it was voted that a tax of four dollars be laid on each right. And the defendants offered in evidence a deed of *Moor's* right, made *Oct.* 30, 1783, by the proprietor's collector, for nonpay-

ment of this tax, and recorded *Dec.* 27, 1796; under which also the defendants claimed the *locus in quo.* But this deed the judge refused to admit.

It was also proved by the defendants that *John Wood,* one of the intermediate grantees of the *Moor*-right under the collector's sale in 1782, had an agent in the vicinity to take care of his land; that in *June* 1798, he sold the lot *No.* 35, by deed of general warranty, recorded *May* 16, 1799; that this lot had been cultivated as a farm, under *Wood's* title, more than twenty-eight years; and that the lot *No.* 113, had been cultivated as a farm more than twenty three years, under claim of title adverse to *Moor.* It further appeared that for the last thirty five years neither *Moor,* nor any person claiming under him, except the plaintiff, had ever claimed the lands in question, or paid the taxes thereon; but that the taxes had been paid by the defendants and their grantors, down to the present time.

Upon this evidence, intending to reserve the questions of law for the decision of the court, the judge directed the jury to find for the plaintiff, which they did; and the verdict was taken subject to such decision.

*Longfellow* and *Greenleaf,* for the defendants, contended—1st, that nothing passed by the deed of *Moor* to the plaintiff, which was a naked release of his right; because the grantor had abandoned his claim, and the lands were held by an adverse possession. The deeds from the collector, and his grantee, having been duly recorded, and being accompanied by payment of taxes and other usual acts of ownership, operated a disseisin of *Moor.* 2dly,— That the deed of *Oct.* 30, 1783, from the collector, though made within six months from the assessment of the tax, ought to have been admitted, and was good evidence of title, under the provincial statute of 1738. *Vid.* 2. *L. L. Mass.* 1016, *app.* For the conditions of the grant not having been fulfilled, the case was within the provisions of that statute, which in such cases authorises a sale at thirty days notice. 3dly, That the entry and occupancy by the grantees, of lots *No.* 35 and 113, under deeds of general warranty, were good entries to disseise *Moor* of the whole right. 3

*N. Hamp. Rep.* 27 ; 4 *Dane ch.* 104, *art.* 3, *sec.* 1. And 4thly, That these sales, even if irregular, might be supported, after so long a time, by the acquiescence of the proprietor. *Gray v. Gardiner,* 3 *Mass.* 399 ; *Knox v. Jenks,* 7 *Mass.* 488 ; *Stat.* 1821, *ch.* 52, *sec.* 12.

*Fessenden,* for the plaintiff, argued that the entry into lots *No.* 35 and 113, could not operate to disseise *Moor* of any other than those particular lots, because the persons claimed no others. He denied that the case disclosed any act of adverse occupancy affecting the legal seisin of the plaintiff's grantor. And he avoided the operation of the statute of 1738, by insisting that it was virtually repealed by that of 1753, 2 *L. L. Mass.* 1035 *app.* which he said was in *pari materia*; and which required a longer notice of the sale than was given by the collector in either year. As to the tax of three silver dollars, on the validity of which the defendants' title depended, he contended that the efficacy of the article under which it was raised was exhausted by the first vote, raising one hundred dollars on each right; so that this tax was wholly without authority in the warrant to support it, and was therefore illegal. Moreover, it was not for any purpose specified in the article in question. *Bott v. Burnell,* 11 *Mass.* 163 ; *Bott v. Perley, ib.* 169.

The opinion of the Court was read at the ensuing *November* term in *Cumberland,* as drawn up by

WESTON J. It sufficiently appears that the title to the *locus in quo* was in *Robert Moor,* and that it passed from *Moor* to the plaintiff in *June* 1819, unless his seisin had been previously divested. The defendants trace back their title to a period long anterior, derived however from the same source ; and depending originally upon two sales of *Moor's* right, for delinquency in the payment of sums voted to be raised by the propriety, of which he was a member. If both or either of these sales can be supported, the plaintiff has failed in his proof of title. And this will depend principally upon the provincial statute, under which the sales were made. If that of 1738, 2 *LL Mass.* 1016, was not repealed by that of

1753, 2 *LL. Mass.* 1035, both the sales may be understood to have been made under the authority of the first act.   There is no repealing clause in the act of 1753, and if the previous act was thereby repealed, it was by implication.   And it is insisted that the second act ought to be regarded as having this effect, because its provisions are general, affording an effectual remedy in all cases of delinquency in the payment of assessments, and indicating the last determination of the provincial legislature as to the extent and limitations of that remedy.   In looking however at the two statutes, the former will be found applicable to a class of cases of a special character.   The latter is general enough in its terms to embrace the former; but it may have a very extensive operation, without regarding the former as abrogated.   The act of 1753 is entitled an act, in addition to an act, directing how meetings of proprietors of lands lying in common may be called; but it authorises the raising of money for the common service, and the sale of the land of delinquent proprietors.   From the preamble, it would seem to have been designed for cases, for which no effectual provision had before been made by law.   The first act referred to grants, made or to be made by the general court; and it made effectual provision to enforce payment of monies raised.   The second, to all lands owned by a considerable number of proprietors, not lying within the bounds of any town or plantation, from whatever source the title might be derived.   The first is confined to sums raised on lands granted upon conditions not fulfilled.   The second has no such limitation. The remedy by sale under the former act might be more speedily enforced; and the legislature might well think that the exigency was more pressing in regard to lands so circumstanced.   A very common condition imposed by the general court upon the grantees was, that they should locate upon the tract granted a certain number of settlers within a limited period.   It was one of the conditions of the grant under consideration.   The fulfilment of this and other conditions might require the raising of funds as speedily as possible, to be expended in causing surveys, making roads, and providing other facilities for bringing forward the settlement of the land.   And we are not satisfied that the act of 1738 was intended to be abro-

Farrar *v.* Perley.

gated by that of 1753. The several committees, under whose superintendance the editions of the Massachusetts laws in 1801 and in 1807 were published, were of opinion that the former act was not repealed by the latter; for in the margin of the former, it is stated to have been revised in 1784. Upon the first committee was the Hon. *Nathan Dane*, deservedly eminent for the accuracy of his knowledge, and for his great industry.

One, if not both these sales, was manifestly made under the act of 1738. The original proprietor acquiesced for thirty-eight years. This acquiescence is not to be accounted for by the minority of his heirs for a portion of the time, or their ignorance of his title; but he himself survived during that whole period, and when he conveyed to the plaintiff, he did it by release, without covenants, and without any valuable consideration expressed in the deed. Whether other sales under the act of 1738, subsequent to 1753, have been made is not within our knowledge. It has been insisted in argument that there have been, and that many titles will be affected, by holding the former repealed by implication. A contemporaneous construction, in a doubtful case, has very properly great weight in determining the effect of ancient statutes. This is to be sure but a single case, and could have little influence in settling the construction; but so far as it goes, it is in accordance with the conclusion to which we have arrived, that the act of 1738 was not repealed by that of 1753, by fair or necessary implication.

It appears that the grant to *Noah Johnson* and others, in which *Moor* was interested, was made by the General Court upon conditions, and at the time of the assessments and sales, upon which the defendants rely, the conditions had not been fulfilled.

An objection is made by the counsel for the plaintiff to the vote of three dollars to each share to defray the charges of the proprietors, for the nonpayment of which the first sale was made; and to the vote of four dollars on each share, for the nonpayment of which the second sale was made. There had been a previous assessment of one hundred dollars in paper money, then greatly depreciated; the first made at an original meeting, and the second and third at successive adjournments of the same meeting. It is insisted that the sum

52

first raised exhausted the efficacy of the article, by which it was authorised ; and that there remained no authority whatever for the sums subsequently voted. Whenever a vote of a propriety or other corporation is evidence of a contract with others, or of a grant to third persons, it is no longer revocable, or subject to be changed or modified at the will of such corporation. It is otherwise with respect to transactions, affecting their interest only. So long as the subject is before them at a regular meeting, they may dispose of it at pleasure. Unless the rights of third persons are affected, whatever they might have done on the first day of the meeting, they might do on the days of adjournment. The warrant was before them, and it was competent for them to reconsider or to modify any vote already passed, or to pass any further vote, falling within the scope of any of its articles. The warrant, and the various matters brought before the meeting by it, were subject to their disposition, until the final adjournment. The sums successively voted under the fourth article, made in the aggregate the sum they thought proper to raise under its authority.

This is an ancient transaction, which remained without question for nearly forty years ; and every reasonable presumption is to be made to uphold it. A verdict was returned, by the direction of the Judge who presided at the trial, for the plaintiff, subject to the opinion of the court, upon the evidence reported. And upon that evidence as reported, the opinion of the court is, that the plaintiff has not entitled himself to judgment thereon. The verdict is accordingly set aside, and a new trial granted.